back because Judge Rustani sits with us from time to time. You've probably seen her name on opinions in the 11th Circuit. Judge Rustani hails from the United States Court of International Trade in New York. And Judge, we appreciate you visiting with us this week to help us decide these difficult cases. Thank you. You're welcome, Judge Wilson. And we have four cases that are ready for the first case. It's the United States of America v. Manuel Tirado-Yerena. And Ms. Shepard is here for the appellant. Mr. Christian and his co-counsel are here for the government. And Ms. Shepard, you may begin. Good morning. May it please the Court. The alternative phrasing in Georgia's entering an auto statute has never been articulated as establishing separate elements and two distinct defenses, not under any state Supreme Court decision, not under any decision by the Georgia Court of Appeals, no pattern jury instruction sets forth separate elements or offenses. And in the 41 years that this statute has been on the books in Georgia, not one case or other authority establishes that it sets forth alternative elements and different offenses. Is there a difference between establishing separate elements and separate means? Yes, Your Honor. As the Supreme Court has stated in Mathis, the Court has made clear that there is a distinction between elements and means. And Mathis holds that where a disjunctively phrased statute sets forth different elements, excuse me, different means by which an offense may be committed, the proper method for evaluating whether that statute matches with a federal generic offense is the categorical approach. All right. Because the government says there's no distinction. All right. And so that the statute is divisible. That has been the government's position prior to Mathis. I think Mathis makes clear that that position is not tenable. And here, if we follow, if the Court follows the three steps described in dicta in Mathis to assess whether the alternative phrasing contained in the statute describes means or that the Georgia entering an auto statute is divisible. Let me just ask you a question. This business of peeking at the record, you don't do that until after you've decided whether the statute is divisible, correct? Or not? The process that Mathis describes in dicta sets out three steps for evaluating whether or not an offense is divisible, whether or not the alternative phrasing lists elements or means. The first step is to look to state law precedent. And I think that myself and Mr. Christian would agree in this case. And that wasn't at all what I was asking you. The judge peeked, right? He peeked at the indictment to see what it was. But as I understand it, under after Mathis, you don't do that until you've decided under the three steps whether it's the statute itself is divisible, correct? I disagree, Your Honor. I think that actually is the third step set forth in Mathis is this peek through step. And that the first two steps are looking first to state law. I don't understand how a peek through can tell you what a statute is. Well, how does peeking at the record tell you what the statute is? I think that is a very valid question, Your Honor. And I think it points to the reality that this peek through step is the least conclusive or helpful step discussed in Mathis for the exact reasons that Your Honor articulates. And it's worth noting that the court in Mathis used very tentative language in describing this peek through and said only that it could be helpful, which is very different than the language it used about the first two steps, which indicated that those steps could provide some definitive answers. But the way that the court in Mathis discussed the peek through was much more tentative. The purpose of that peek through is not to do a jump start or a shortcut to the modified categorical approach, but merely to look and see, does do the record materials give any insight as to how the state law works? The court noted that it may not speak plainly in every case. And I would argue that in this case, it does not speak plainly and does not provide any conclusive or helpful answers as to how state law works in this case. Well, clearly, the indictment narrowed the statute in a way so that it only referred to the theft. So I suppose one might argue that, well, when it does something like that, it indicates to you that the state statute is divisible. Otherwise, they would have left everything in because it was only means. Well, to respond to that, Your Honor, I would make several points. One is that the peek through contemplated by the Mathis court, first of all, calls for multiple documents. It does not call for reliance on a single indictment. Every time that the court in Mathis discussed the peek through, it referred to, at the very least, an indictment along with jury instructions. Here, we only have the indictment, nothing further. Second of all, those record documents, even looking at them, may not provide clarity. And as Justice Alito noted in the dissent in Mathis, that just because something is specifically alleged in an indictment does not mean that it is an element, that local practices may vary. And that is particularly true here in Georgia, where Georgia law requires that prosecutors include factual particulars in an indictment, that prosecutors in Georgia, as I understand it, may not charge based on generic statutory terms. You would agree that the state law is unclear in this case as to whether or not its means are an element, right? I would agree that, yes, Your Honor, that it is unclear and that absent that clarity, the record materials do not speak plainly and rectify that clarity. So if we're on the non-categorical approach, once we get to that point, then under Shepard, we can peek at the record. We can look at the verdict form and the indictment. And the question Judge Rastani asked is, I'll just speak for myself, I don't know the answer to that because the case does talk, the majority opinion in Mathis talks about element and how can you or not is a difficult question. But in Mathis, Mathis actually gives examples of what you can do. And in Mathis, I'm looking at Mathis right now, it gives an example about burglaring a building, structure, or vehicle and say that the indictment can say what it is that is charged. In this case, we all agree that once you look at it, that what was charged was the theft, right? Well, am I, are you with me? A few things, Your Honor. First of all, I disagree that it is the case that if it is unclear whether it is elements or means, that that then means that the court applies the modified categorical approach. Whether or not the court applies the modified categorical approach rests upon the, whether or not the statute is divisible. And it is my position that where that is. And you agree you look to state law. And if state law doesn't answer the question, then you can look at the indictment. The step set out in Mathis is you look first to state law, which in this case is unclear. You look second to the face of the statute itself, which in this case, my position is that the face of the statute itself is neutral with respect to the means versus elements inquiry. And then as a third step, what may be helpful, not is to conduct the modified categorical approach, but to do a peek through to see does looking at the record documents in this case, tell us how the state law works. And in this case, it does not tell this court how the state law works. And I think as a... We might have a little different view of Mathis, but I have another question. And that is, as an initial matter, why isn't any error harmless error? I'm looking at the sentencing transcript and what the district judge said. The district judge very clearly said that having considered all the circumstances of the defendant's conduct and the conduct in the United States and so forth, that the sentence would be the same whether or not he was correct in doing the eight-level enhancement. With four levels, the sentence is 15 to 21 months. And the sentence was... And with eight levels, it was 24 to 30 months. And the sentence was 25 months. And the district court in this case said for all of these reasons and enumerated all of the reasons, the sentence would be the same whether I'm correct or not on the eight-level enhancement under the statute. Why isn't the error harmless? The error in this case is not harmless because the 25-month sentence that was imposed, as Your Honor articulated, would have been an upward departure above the guideline. And the district judge said he would upwardly depart. He, in fact, did not make findings that he would upwardly depart or any findings that an upward departure was warranted in this case. It's my argument that this case was not outside of the heartland of illegal reentry cases and that an upward departure case... Excuse me, an upward departure or upward variant sentence... Well, the district court said that it considered all the circumstances of your conduct and your conduct in the United States when you returned here, considering your repeated conduct in returning to the United States of committing crimes once you were here, and then not abiding by the terms of supervision under the state authorities, that under the circumstances of this case and under 3553 factors, that even if I am wrong under the guidelines, which I believe I am not, and specifically whether or not that eight-point enhancement applies or not, that this is the sentence that I would impose in this case because of your conduct and the history that you've exhibited so that the sentence I intend to impose. What more could the district court say if it went back? I think what is missing, Your Honor, are specific findings and specific conclusions that an upward departure sentence would have been warranted, whereas under... Your position is that's not specific enough. That is my position, relying on United States v. Melvin. And I also think there is an issue here of the government requesting for the court to make those findings. I think that appellate review is an important right that this defendant did not waive by virtue of an appeal waiver, which the government has the power to offer and to use to motivate a plea agreement in this case and did not do so. And I do think there is a due process right here, particularly where the case presents a novel issue of law as this case did. All right. I see you've reserved some time for rebuttal argument, Ms. before this court is Judge Black's question, which is whether the sentence imposed was reasonable because the district court clearly stated that it would have imposed a 25-month sentence, regardless of the disputed sentencing enhancement. Under Keene, this court need not reach the enhancement issue, never need reach the DeKalb's and Mathis analysis, so long as the sentence imposed would have been reasonable under 3553A. Well, did the government request that the court make specific findings that would support an upward variance? The government, during the sentencing hearing, the government, the district court was explaining its bases for what would, what sounded like it would be an upward variance sentence. At that time, the government asked the district court to make clear on the record if it was going to, in fact, impose a sentence based on 3553A, regardless of what the sentencing guideline range was, to make that clear, so this court would be clear under its precedent in Keene, whether the district court's finding was dependent upon the sentencing guidelines or was irrespective of them. And there's no, the defense's issue is with Keene, and Keene is the law, and it's appropriate for the district court to make those findings in light of Keene and could not have made them any clearer. Yeah, I know the government makes that argument from time to time, but is that a way that a district judge can insulate her sentence from appellate review by just saying that all the time? Even if I'm wrong on the guidelines, I would impose the same sentence anyway, period, and so therefore, all sentencing errors in the district court would be in evaluating sentencing enhancements or not based on the district court's ultimate sentence not being based on them. That said, the district court in this case made very clear that this was a very rare thing for this particular judge to do. This judge does not do this often, but he was doing it in this case because of Mr. Tirado's extensive criminal history and, more significantly, his extensive immigration history. Counselor, don't we look at the Supreme Court opinion last year of Melina Martinez and the Supreme Court, in my understanding, the subtext of the opinion, it appears to me personally, that the court was addressing Judge Wilson's concern, and that is, wait a second, you look at the third prong of that under plain error review, if it's substantial rights, it's going to be a constitutional violation if there's an upward departure. But the Supreme Court was, in that same case, states that the record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the guideline range. So it left that open. And so I think the question is here, did the court say enough? And, Your Honor, I think the answer to that question is yes. The court plainly said enough. The district court said that it is not often the case that it finds that its sentence would have been the same under 3553A regardless of the application of a sentencing enhancement. The reasons, frankly, what the district court said was that the 3553A factors, quote, compel, end quote, a 25-month sentence. Because Mr. Tirado entered this country seven times illegally, was convicted of crimes four times while here, was convicted of the two felonies at issue in this case during prior periods of probation, and that his profound disrespect for the law of the United States warranted a 25-month sentence, which is not an upward departure, which is a, even if the defendant were correct on his interpretation of the sentencing guidelines, the district court sentence would have been only a four-month upward variance, a small variance, and one that is appropriate and warranted given Mr. Tirado's extensive immigration violations and criminal convictions. I'd like to ask you about the Mathis question. It seems to me this long series of cases we've had is to avoid apprendi issues, to get things down to a narrow view of this exception to the right to a jury trial where you have a previous conviction that is clear about what it is. Now, I'm not sure the Supreme Court is all clear about this, but there's a good logical argument based on the way they've been going that you don't really look at what happened in the indictment for the purpose of seeing what he was convicted of until you actually figured out whether the statute was divisible. I mean, that's a good logical argument that can be made from what the Supreme Court has been doing in these post-apprendi cases with this exception. So, why isn't that correct? Isn't that the sense of it? Before you do anything, you have to find out whether this is a divisible statute. That's what your counsel argued, and I thought there was a logic behind it. Your Honor, I think that you're correct, and my defense counsel is correct, that you first have to determine divisibility. However, before Mathis, the look at the underlying record came after divisibility. Now, since Mathis, looking at the underlying record is part of the divisibility analysis. It's the third step, because what we're doing is searching state law, both case law and statutes, and then searching the underlying record to see what do courts do in terms of jury instructions, what do prosecutors do in terms of charges to see if these are two separate elements or not. And the key language in Mathis is, quote, an indictment could indicate by referencing one alternative term to the exclusion of all others that the statute contains a list of elements, each one of which goes toward a separate crime. That's part of the divisibility analysis, and for both Mr. Tirada's convictions, the indictment is crystal clear that the only mens rea in those indictments is intent to commit a theft. I think something key to acknowledge here is that theft is necessarily functioning as an element, because in that indictment, if theft is not proven, the defendant is not guilty. I'm sorry. Go ahead. I'll let you finish that. And that is what Mr. Tirada pled to, although there are no jury instructions in Mr. Tirada's case because it was a guilty plea, but if you look at jury instructions to the extent that you can find them in these cases, and I provided an example of the jury instructions in the Pound case, it seems to be that juries are charged either with the theft intent or another felony intent, not both. Similarly, as you read all of the cases, and I've read all 79 of them, that have to do with the state court's interpretation of this Georgia statute. 77 deal with thefts. It's primarily a theft statute. Two deal with non-theft offenses, and at all times, the court's describing it as either a theft statute or in those two non-theft felony cases as an assault, intent to commit an assault, intent to commit a kidnapping. So although we do not have the first prong of the Mathis sort of toolbox, we don't have a state case that says these are elements or these are means. The third step of Mathis is very clear, cannot be clearer, that these are alternative elements, and likewise, the second Mathis step is too. The second Mathis step says look at the statute's text, look at its structure, see if we can determine if these are elements, and this court has consistently held when you have a single it's finite. Those are alternative terms. That's a strata, and that's what you have here. Only two mens rea. It's an exhaustive list in a single statutory phrase. This court's been clear and consistent in interpreting that as alternative elements. I'm looking at this statute, and you can be convicted of this Georgia statute that was used to enhance his sentence. You can be convicted of violating this statute and be sentenced to less than a year in prison, right? The judge has the discretion to sentence it as a misdemeanor. Yes. Isn't that inconsistent then with having been convicted of a felony? No, Your Honor. Which is required to enhance his sentence? No, Your Honor. I don't believe it is, and the defendant has admitted through all of its briefs and in the district court that that's not correct because the defendant here was convicted of a felony and was given a felony sentence, and under the law, that's adequate to qualify as an aggravated felony. And why is that? I don't understand why that's the case. I think, Your Honor, that's the case because what matters is what was the sentence, and what was the conviction, and what was the sentence as a defendant here? And if we look at the attachments to the sentencing memorandum here, the records of conviction of the defendant, both clearly check. There's a checkbox. Is this a felony sentence or a misdemeanor? They both clearly check that it's a felony sentence, and then they both clearly impose a sentence that's more than a year. So there's no question that the defendant was convicted of a felony, and he has admitted that much through the entirety of this case. If this were a misdemeanor sentence, we may have a different issue, but we don't. Because Mr. Trotta's sentence was reasonable, regardless of the disputed sentencing enhancement, this Court should affirm his sentence without ever reaching the de Kamps-Mathis analysis under its precedent in Keene. And if this Court does reach the de Kamps-Mathis analysis, the record and the law are clear here that under the second Mathis tool, the text and structure of the statute, and under the third Mathis tool, the peak at the indictment, that the Georgia statute is divisible, and that the theft offense therein matches the generic definition of attempted theft. Accordingly, this Court should affirm Mr. Trotta's sentence. Counsel, it would be of benefit to me if you would just quickly go through the government's view of what is done in determining whether a conviction meets the generic version of a crime after Mathis. Just go through the steps. So the first step is to compare the state statute to the generic version of an attempted theft offense. And here, everyone agrees that because we have these alternative mens rea, some of which might be a generic theft and some of which are not, that we don't have an answer there. So then Mathis gives us three tools to conduct the divisibility analysis. First, does a state case answer the question? We don't have that here. Second, absent a state case, does the structure and text of the statute tell us whether these are elements? And again here, I think it's critical that we have a single statute phrased in the disjunctive with only two alternative mens rea. And this Court consistently has held when you have that type of structure, you have alternative elements. A contrary structure, which is the Howard case the defense relies on, is where you have a statute that sets forth alternative terms and then it points to a second statute. And then that second statute defines some term or terms in the first. And that definitional section is non-exhaustive and disjunctive. Whenever you have that type of structure, that multi-statute structure, this Court has held those are not elements. But that's not what we have here. We have just the one. And then the third step of Mathis is the peek at the record. Again, this is new after Mathis. Now you can look at the record, you can look at the indictment, and you can say, does that tell us anything about whether these are elements? Let me ask you this. Suppose you went through all these three steps that Justice Kagan gave us and you come to the conclusion that you don't know the answer. Then since this is in derogation of the right to a jury trial, would you then say, okay, we have to, if the default position must be that it's not an element. Is that the right way to do it? I understand you don't think we're at that point, that you think you went under step two and three. But suppose you had a toss-up. Is that what you do? Well, I disagree a little bit on the jury point, but I think the answer is the government bears the burden of establishing a sentencing enhancement. And then this Court reviews the district court's determination de novo. So a wash goes to non-applicability of the enhancement. Okay. But I don't think we need to get there again. Frankly, I think the Mathis analysis is clear. It's steps two and three. And again, I don't think we need to get there because the threshold question, which Judge Black initially asked about the district court making clear that its determination would have been the same regardless of the applicability of the enhancement, the district court could not have been clearer. And given Mr. Terada's record of seven times being found unlawfully in the country and four criminal convictions, including two while on probation, a 25-month sentence is more than reasonable under 3553A. And your view is that saying something more like, I know this is an upward departure variance, but that's what I would do, that that's unnecessary verbiage? I think it is unnecessary verbiage. And I think that district courts, especially those who've been sentencing defendants out prior to the guidelines, they're very focused on the 3553A factors and they give them careful consideration and the district court did that here. Has he already been deported again for the eighth time? He has been removed. He was removed just one day prior to this court's asking for supplemental briefing. Okay. All right. Thank you, counsel. Thank you. Can I just ask one question? It was just kind of procedural. He's removed like he had three months left on his sentence, right? So is the idea that you remove him before he's eligible for like released to a halfway house or something? Is that how this goes? That ICE comes and gets him just prior to a less restrictive confinement? The process, as I understand it, Your Honor, is that he serves his entire term of imprisonment, which can be discounted by up to 15% for good time credit. And so once he has served his entire term of imprisonment and the Bureau of Prisons designates him as complete, ICE is notified, and then ICE takes him into administrative custody and initiates removal proceedings, just as he was advised would happen at the time. So was this whole sentence over? The custodial portion of his sentence is over. All that remains is his three-year term of supervised release. And does that keep it from being moot? I think the mootness question is a difficult one, and I'm happy to address it because I think there are some cases on that point. Do you want him to address it? It's up to you. Yes. I think the key case here is one that has not been cited by either of the parties, which is this court's decision in Baeza-Hernandez. And it's not published in its per curiam. And I think there are some issues with this decision, which makes this a difficult question. That case held that release from imprisonment and removal from the United States did not moot the appeal of an individual like Mr. Tirado, who had been convicted of illegal reentry and sentenced as an aggravated felon. Do you have a published case, a published opinion? I think the published opinion is the one on which Baeza-Hernandez relied. And I think the difference between the two is key here and decides mootness. And that's MnCID versus Attorney General 468 F3D 763. Is that an 11th Circuit case? It's an 11th Circuit case, but the posture is different in this sense. Here we're dealing with a conviction of someone for illegal reentry and a sentencing issue before the district court. MnCID was an appeal of a Board of Immigration Appeals decision to this court. And really the rationale in MnCID was that because the individual there faced a potential collateral immigration consequence if he ever returned to the felon status attached to him, and because the Board of Immigration Appeals decision would be binding on subsequent immigration courts decisions, that status should be appealable. Here, the district court's determination at sentencing that Mr. Tirado is an aggravated felon has no collateral consequence of any kind because the Board of Immigration Appeals and the entire immigration system does not look to a district court's sentencing decision as anything more than persuasive if even that. All right. We'll look into that a little further. Thank you, Mr. Christian. Thank you, Your Honor. All right. And we'll hear from Ms. Shepard again. I wonder if you can pick up on that. Are you prepared to briefly address the mootness issue? Yes, Your Honor, I can. Do you disagree? Yes, Your Honor. It is our position that this case is not moot because Mr. Tirado is still subject to the term of his supervised release. And that raises the possibility of a revocation. Counsel, I always understood that was a law of the circuit, just sort of like black letter law. Yes, Your Honor. But what I hadn't thought about is, is it different in a context, an immigration context? I hadn't thought about that. Is it? No, Your Honor. It's my position that it's not. The possibility of revocation still exists even after his deportation. And the cases I would cite for that are this court's published decisions in Dawson v. Scott and United States v. Cage. Are either one of those immigration cases? Neither of those are. And there is a published decision, United States v. Orrega, that addresses the effect of deportation and whether that renders an appeal moot. And notably, and it determines that it didn't, in part based on the fact that the controversy still exists. But notably, one of the considerations in Orrega is that even after deportation, a supervised release revocation is not too remote or would not, is still a possibility. And the court specifically looked to, in that case, the defendant's numerous prior reentries as establishing as a factual basis for the likelihood of reentry. And arguably, the facts are the same here. You know, I think it's probably a good idea if we permit you to file supplemental briefs just addressing the mootness issue within 10 days, no more than 10 pages. Okay. Thank you, Your Honor. I wanted to respond to the government's arguments as to the peek-through specifically with Mathis. And the government's position seems to be that under Mathis, that the peek-through here answers the question. And I think that, first of all, the Mathis court made clear that the function of the peek-through step is limited and that its usefulness is limited. And the question that the court has to ask in doing a peek-through, not is what are the facts here? What are the facts of this case? But how does the law work? And I think an example of how looking only at an indictment as the government would urge this court to do here, an example of that unreliability of that, we need look no further than Mathis itself. In Mathis, the indictment was also, to use the government's word, crystal clear. And the indictment in that case charged the defendant with entering a specific building. And if a court in a position such as this court were to look only at the indictment in that case, and would do as the government would urge here, and conclude that the fact that the indictment charged a specific building means that the type of structure is an element and therefore the statute is divisible, well, we know that's not the case in Mathis because that statute is indivisible. So there is a circumstance where we have a statute that is unquestionably indivisible. So says the state Supreme Court. So says the United States Supreme Court. But looking at the indictment, it charges one among the alternatives that are listed in the statute. That doesn't mean that those alternatives are elements. And I would also disagree with the government. I too have read every case I can find that addresses this statute. And there are some cases, some Georgia state cases, addressing this state entering an auto statute where the intent is described as intent to commit a theft or felony, the same language that is in the statute. So it is not the case that at all times the state court has described this as either a theft or a felony. There are cases describing the intent as to include both means. And if this court were presented with one of those indictments, presumably the peek through would reveal that the alternatives here are means. So I would just make the argument that the fact of what is charged in this case, the prosecutor's decision in this case should not determine the state law. It cannot be that the prosecutor's practice in how he or she drafts her indictment makes the decision as to whether or not these are means or elements. That cannot be the case. And to the extent that the government argues that the finite nature of a list of alternatives, that that alone establishes that those are elements, I think the court in Descamps tells us that the mere fact of a statute containing or does not mean that the statute is divisible. And nowhere in Mathis does it say that if the alternatives are stated as a finite list, that that renders them elements as opposed to means. Well, I think we have your argument, Ms. Shepard. Okay. Thank you, Your Honor. Thank you. Thank you, counsel. And I'll call the next case. It's